UNITED STATES DISTRICT COURT

DISTRICT OF MARYLAND

---

DANTE DOMENICHELLI, an individual,
29 Alpine Road
Monroe, Connecticut 06468,

                          Plaintiff,

      v.

VIRIDESCENT REALTY TRUST, INC.,
a Maryland Corporation
7 St. Paul Street, Suite 820
Baltimore, Maryland 21202,

                       Defendant.

Case No.:

**COMPLAINT FOR**

**(1) Breach of Contract (Award Agreement and Plan);**

**(2) Breach of Contract (Stockholders Agreement);**

**(3) Declaratory Judgment**

**DEMAND FOR JURY TRIAL**

---

Plaintiff Dante Domenichelli ("Mr. Domenichelli"), by and through his attorneys at Offit Kurman, for his Complaint against Defendant Viridescent Realty Trust, Inc. ("VRT"), avers as follows:

**<u>INTRODUCTION</u>**

1.      VRT, at the direction of its Board of Directors, terminated Mr. Domenichelli from employment with VRT on August 13, 2024 and then improperly, *ex post facto*, claimed it was for cause and clawed back Mr. Domenichelli's shares of VRT that he received as part of his VRT compensation.

2.      Since that date, upon information and belief, VRT has withheld payment of more than $347,407.05 in distributions from Mr. Domenichelli.

- 1 -

3.      Among other relief, this action seeks a declaration that VRT must return to Mr. Domenichelli his shares in VRT and payout the more than $347,407.05 in distributions he is owed.

## THE PARTIES

4.      Mr. Domenichelli is an individual residing at 29 Alpine Road, Monroe, Connecticut 06468 and, prior to his wrongful ouster on August 13, 2024, was the Chief Operating Officer of VRT.

5.      Defendant Viridescent Realty Trust, Inc. is a Maryland corporation that was formed April 30, 2021.  VRT's principal place of business is in California.

## JURISDICTION AND VENUE

6.      This Court has jurisdiction over the subject matter of this action under 28 U.S.C. § 1332(a)(1) because the matter in controversy exceeds the sum or value of $75,000 (exclusive of interest and costs) and is between citizens of different states.

7.      A case of actual controversy has arisen between the parties pursuant to 28 U.S.C. § 2201 regarding the wrongful withholding of more than $347,407.05 in distributions from Mr. Domenichelli by VRT at the direction of its Board of Directors.

8.      This Court has personal jurisdiction over defendant VRT because it is incorporated in Maryland, lists its principal office and registered agent as within Maryland, and the claims at issue arise out of or relate in substantial part to VRT's activities in Maryland.

9.      Moreover, the Stockholders Agreement for VRT (defined below) includes a "Submission to Jurisdiction" provision, whereby each party to the agreement consented to exclusive jurisdiction "of the courts of the State of Maryland and to the jurisdiction of the United States District Court for the State of Maryland[.]"

10.     The Stockholders Agreement was incorporated into and made a part of the Restricted Shares Grant Agreement pursuant to which Mr. Domenichelli received the 794 shares at issue and upon which he is suing VRT.

11.     Venue is proper in this district under 28 U.S.C. § 1391.

## FACTUAL ALLEGATIONS

12.     VRT is a Maryland real estate investment trust (a "REIT") that focuses on loans collateralized by real estate, equipment, licenses, and/or other assets of established companies operating in the cannabis industry in states that have legalized medicinal and/or adult-use cannabis.

13.     Peter Carlton, Brent Cox, Brian Kabot, and Jonathan Goldrath were each a member of VRT's Board of Directors and directed the control of VRT at all times during the accusations that form the basis for this action.

**The Charter**

14.     VRT was incorporated on or about March 8, 2021.

15.     On or about April 30, 2021, the governing Charter for VRT was filed.  A true and correct copy of the Charter is attached as **Exhibit A**.

- 3 -

16.     Pursuant to the Charter, VRT designated CSC-Lawyers Incorporating Service

Company, 7 St. Paul Street, Suite 820, Baltimore, Maryland 21202, as its registered agent. *Id.* at

Article IV.

17.     The Charter provides "The business and affairs of the Corporation shall be

managed under the direction of the Board of Directors." *Id.* at Article V.

18.     Pursuant to the Charter, certain actions were reserved to the Board of Directors:

> Section 5.6 Determinations by Board. The determination as to any
> of the following matters, made by or pursuant to the direction of the
> Board of Directors, shall be final and conclusive and shall be
> binding upon the Corporation and every holder of shares of its stock:
> the amount of the net income of the Corporation for any period and
> the amount of assets at any time legally available for the payment of
> dividends, acquisition of its stock or the payment of other
> distributions on its stock, the amount of paid-in surplus, net assets,
> other surplus, cash flow, funds from operations, adjusted funds from
> operations, net profit, net assets in excess of capital, undivided
> profits or excess of profits over losses on sales of assets, the amount,
> purpose, time of creation, increase or decrease, alteration or
> cancellation of any reserves or charges and the property thereof
> (whether or not any obligation or liability for which such reserves
> or charges shall have been created shall have been set aside, paid or
> discharged), any interpretation or resolution of any ambiguity with
> respect to any provision of the Charter (including any of the terms,
> preferences, conversion or other rights, voting powers or rights,
> restrictions, limitations as to dividends or other distributions,
> qualifications or terms or conditions of redemption of any shares of
> any class or series of stock of the Corporation) or of the Bylaws, the
> number of shares of stock of any class or series of the Corporation,
> the fair value, or any sale, bid or asked price to be applied in
> determining the fair value, of any asset owned or held by the
> Corporation or of any shares of stock of the Corporation, any matter
> relating to the acquisition, holding and disposition of any assets by
> the Corporation, any interpretation of the terms and conditions of
> one or more agreements with any person, corporation, association,
> company, trust, partnership (limited or general) or other entity, the
> compensation of directors, officers, employees or agents of the
> Corporation, or any other matter relating to the business and affairs

of the Corporation or required or permitted by applicable law, the Charter or Bylaws or otherwise to be determined by the Board of Directors.

*Id.* at § 5.6.

**VRT Bylaws**

19.    On or about April 30, 2021, VRT adopted its Bylaws.  A true and correct copy of the Bylaws is attached as **Exhibit B**.

20.    The Bylaws repeat that "The business and affairs for the Corporation shall be managed under the direction of the Board of Directors."  *Id.* at Article III, Section 1.

21.    The Bylaws provide that the action of the majority of directors is the action of the Board:

> Section 7. <u>VOTING</u>. The action of a majority of the directors present at a meeting at which a quorum is present shall be the action of the Board of Directors, unless the concurrence of a greater proportion is required for such action by applicable law, the Charter or these Bylaws. If enough directors have withdrawn from a meeting to leave fewer than required to establish a quorum, but the meeting is not adjourned, the action of the majority of that number of directors necessary to constitute a quorum at such meeting shall be the action of the Board of Directors, unless the concurrence of a greater proportion is required for such action by applicable law, the Charter or these Bylaws.

22.    VRT was to have a President, Secretary, and Treasurer. *Id.* at Article V, Section 1.

23.    In the absence of a chief executive officer, the President supervises and controls the business and affairs of VRT.  *Id.* at Article V, Section 7.

24.    The Bylaws address distributions by VRT:

**DISTRIBUTIONS**

> Section 1. <u>AUTHORIZATION</u>. Dividends and other distributions upon the stock of the Corporation may be authorized by the Board of Directors, subject to the provisions of law and the Charter. Dividends and other distributions may be paid in cash, property or stock of the Corporation, subject to the provisions of law and the Charter.

> Section 2. <u>CONTINGENCIES</u>. Before payment of any dividends or other distributions, there may be set aside out of any assets of the Corporation available for dividends or other distributions such sum or sums as the Board of Directors may from time to time, in its sole discretion, think proper as a reserve fund for contingencies, for equalizing dividends, for repairing or maintaining any property of the Corporation or for such other purpose as the Board of Directors shall determine, and the Board of Directors may modify or abolish any such reserve.

*Id.* at Article IX.

**The Stockholders Agreement**

25.     Effective April 30, 2021, the initial stockholders of VRT entered into a Stockholders Agreement.  A true and correct copy of the Stockholders Agreement is attached as **Exhibit C**.

26.     The Stockholders Agreement includes a Submission to Jurisdiction provision whereby each party to the agreement consented to exclusive jurisdiction in the state and federal courts of Maryland.  *Id.* at § 4.16.

**Mr. Domenichelli's Employment with VRT**
**and Compensation Package Inclusive of VRT Shares**

27.     VRT hired Mr. Domenichelli as its Chief Operating Officer on or about June 30, 2022.

28.     As part of his compensation package, VRT offered Mr. Domenichelli a base salary, bonus eligibility, stock compensation, and other benefits.

29.     VRT awarded Mr. Domenichelli 794 Restricted shares in VRT as more fully described in a copy of a Restricted Shares Grant Agreement, dated as of June 30, 2022, between VRT and Mr. Domenichelli (the "Award Agreement"), a true and correct copy of which is attached hereto as **Exhibit D**.

30.     The Award Agreement attached as an exhibit and incorporated by reference a copy of the VRT Stockholders Agreement.  *See* Ex. D at Appendix A.

31.     The Award Agreement also incorporated by reference a certain Stock Incentive Plan, dated and approved by the VRT Board of Directors as of April 30, 2021 (the "Plan"), a true and correct copy of which is attached hereto as **Exhibit E**.

32.     Mr. Domenichelli subscribed to and joined the VRT Stockholders Agreement on June 30, 2022 (the "Domenichelli Subscription").  A true and correct copy of Mr. Domenichelli's Subscription Agreement is attached hereto as **Exhibit F**.

33.     Mr. Domenichelli performed his duties as Chief Operating Officer for VRT from his appointment through August 13, 2024, without objection.

34.     During that time, two-thirds, or 529, of Mr. Domenichelli's shares vested.

35.     During Mr. Domenichelli's tenure, VRT outperformed its competitors by a significant margin, resulting in distributions for VRT's shareholders.

36.     As a shareholder in VRT, and in accordance with I.R.C. § 857(a)(1),[1] Mr. Domenichelli was entitled to enjoy certain benefits including, but not limited to, distributions that may be payable as dividends from time-to-time.

37.     Mr. Domenichelli remained entitled to those benefits even after his employment was terminated provided he was not terminated for cause.

**Defendants' Unlawful Actions**

38.     On or about August 13, 2024, a VRT Board meeting was held.

39.     Carlton, Cox, Kabot, and Goldrath were each a member of VRT's Board of Directors at the time.  A copy of the Minutes from the meeting are attached as **Exhibit G**.

40.     Carlton was the President of VRT at the time of the August meeting.

41.     During the meeting, Carlton presented resolutions for "discussion", including: (1) removal of an officer of VRT, (2) termination of VRT's existing management agreement with Viridescent Management, LLC, and (3) retention of FocusGrowth Asset Management, LP as the new management company for VRT.

42.     Upon information and belief, Goldrath is one of the founding partners in FocusGrowth.

43.     Upon information and belief, the resolutions, or at least the topics in the resolutions, had been discussed between or among Carlton, Cox, Kabot, and Goldrath prior to the

---

[1]     REITs must distribute as dividends at least 90% of their taxable income to shareholders. *See* I.R.C. § 857(a)(1).

meeting because there was no meaningful discussion of the issues during the meeting; they were treated as a *fait accompli.*

44.    Mr. Domenichelli was the VRT officer who was removed during the meeting.

45.    No explanation was provided to Mr. Domenichelli during the meeting as to why he was being removed, and there was certainly no mention of termination for cause, clawing back his equity, or actions that would otherwise impair his post-termination benefits.

46.    On October 16, 2024, Carlton, Cox, Kabot, and Goldrath were each a member of VRT's Board of Directors.

47.    Carlton was President of VRT at the time.

48.    Upon information and belief, on October 16, 2024, VRT took action by Written Consent of the Board of Directors (the "Action").

49.    In the Action, the Board directed the issuance of a Restricted Stock Forfeiture Notice to Mr. Domenichelli, and others.

50.    In the same Action, the Board declared a dividend of $18.90 per share and a return of capital per-share of $285.85.

51.    Upon information and belief, and as reflected in the Action, all other shareholders except the Withheld Stockholders as defined in the Action, were paid their distributions on or about October 16, 2024, including Carlton, Cox, Kabot, and Goldrath and/or their respective companies.

52.     In the same Action, the Board authorized FocusGrowth to take action to enforce the Action.

53.     On or about October 16, 2024, Carlton as President of VRT, issued the Notice of Forfeiture of Restrict Stock to Mr. Domenichelli.  A true and correct copy of the Notice issued to Mr. Domenichelli is attached hereto as **Exhibit H**.

54.     The Notice claims that Mr. Domenichelli's "services to the Company are hereby deemed to have been terminated for Cause (as defined in the Plan) as of August 13, 2024." *Id.*

55.     The Notice references a Schedule A, which sets forth the alleged "for cause" basis for the termination.

56.     Mr. Domenichelli has not engaged in fraud or fraudulent activities as set forth in Schedule A and Defendants know it; many of them approved the transactions and/or activities referenced in Schedule A.

57.     Upon information and belief, VRT has attempted to rescind or claw back equity from two other former executives (in addition to Mr. Domenichelli), and it has withheld distributions from certain other VRT shareholders (but not all) in an improper effort to hedge against potential losses on loans extended by VRT and/or to further personal vendettas.

58.     The subject loans were approved by VRT's Board of Directors at the time they were entered into without any guarantee to shareholders on the rate of return for those loans.

59.     In furtherance of their scheme, Carlton, Cox, Kabot, and Goldrath created the pretense of terminating Mr. Domenichelli for cause so they could attempt to claw back his shares

— negating distributions to him and increasing the distributions to themselves or the shareholders they are affiliated with.

60.     VRT attempted to wrongfully retroactively terminate Mr. Domenichelli's employment "for cause" in an improper effort to claw back his VRT shares and has improperly withheld at least $347,407.05 from Mr. Domenichelli to date.

## FIRST CAUSE OF ACTION
### (Breach of Contract Against VRT – Award Agreement and Plan)

61.     Mr. Domenichelli repeats and realleges the allegations contained in paragraphs 1 through 61 as if set forth herein.

62.     The Award Agreement and Plan constitute valid and enforceable contracts between VRT and the officers or employees covered by them, including Mr. Domenichelli.

63.     The Award Agreement and Plan entitled Mr. Domenichelli to certain equity in VRT.

64.     VRT partially performed the Award Agreement and Plan by granting Mr. Domenichelli 794 VRT shares and making distributions to him in until August 2024.

65.     VRT has breached the Award Agreement and Plan by attempting to claw back those shares without cause and, therefore, withholding, diverting, and otherwise failing to pay to Mr. Domenichelli his apportioned share of distributions.

66.     VRT's actions were purposeful and have caused and will continue to cause Mr. Domenichelli substantial harm.

67.    Accordingly, Mr. Domenichelli is entitled to an order directing VRT to pay to Mr. Domenichelli his proportionate share of all distributions that have been paid to VRT's other shareholders since October 15, 2024, with interest from the date distributed to VRT's other shareholders.

**SECOND CAUSE OF ACTION**
**(Breach of Contract Against VRT – Stockholders Agreement)**

68.    Mr. Domenichelli repeats and realleges the allegations contained in paragraphs 1 through 68 as if set forth herein.

69.    The Stockholders Agreement constitutes a valid and enforceable contract between VRT and its stockholders.

70.    The Stockholders Agreement entitles Mr. Domenichelli to payment of distributions by VRT in proportion to those paid to its other shareholders.

71.    VRT has breached the Stockholders Agreement by withholding, diverting, and otherwise failing to pay to Mr. Domenichelli his apportioned share of distributions.

72.    VRT's actions were purposeful and have caused and will continue to cause Mr. Domenichelli substantial harm.

73.    Accordingly, Mr. Domenichelli is entitled to an order directing VRT to pay to Mr. Domenichelli his proportionate share of all distributions that have been paid to VRT's other shareholders since October 15, 2024, with interest from the date distributed to VRT's other shareholders.

## THIRD CAUSE OF ACTION
### (Declaratory Judgment)

74. Mr. Domenichelli repeats and realleges the allegations contained in paragraphs 1 through 74 as if set forth herein.

75. Actual, present, and justiciable controversies have arisen between the parties concerning the rights of the parties, as identified herein.

76. The Award Agreement, Plan, and Stockholders Agreement constitute valid and enforceable contracts and agreements between VRT and Mr. Domenichelli.

77. These documents detail the obligations of VRT and the rights and protections afforded to employees and stockholders such as Mr. Domenichelli.

78. Based on the aforementioned facts, Mr. Domenichelli seeks a declaration that: (1) he was not terminated by VRT for cause as defined by the Award Agreement and Plan, and (2) the Award Agreement, Plan, and Stockholders Agreement, in connection with VRT's payment of the Distributions to other similarly situated stockholders, entitle Mr. Domenichelli to pro rata payment of the Distributions (and all subsequent distributions, if any) by VRT in proportion to those paid to its other stockholders.

79. Mr. Domenichelli further seeks a declaration that VRT otherwise has no justification for withholding the Distributions, or future distributions, from him.

80.    In this regard, Mr. Domenichelli seek a declaration that the Clawback and Forfeiture Policy, cited by VRT in the Notice, does not apply and does not provide justification for Defendants' failure to pay the Distributions or any future distributions owed to Plaintiffs.

81.    Declaratory relief is appropriate here to guide the parties in their past, current, and future conduct in relation to issues identified herein.

**WHEREFORE**, Mr. Domenichelli demands judgment as follows:

a.    On his first cause of action, compensatory damages, interest, attorneys' fees, and costs;

b.    On his second cause of action, compensatory damages, interest, attorneys' fees, and costs;

c.    On his third cause of action, a declaration of the parties' rights and obligations under the Award Agreement, Plan, and Stockholders' Agreement, attorneys' fees, and costs; and

d.    Such other and further relief as the Court deems necessary and proper.

## <u>DEMAND FOR JURY TRIAL</u>

Pursuant to Federal Rule of Civil Procedure 38, Mr. Domenichelli hereby demands a jury trial on all issues so triable.

Dated:          January 10, 2025

                                           **OFFIT KURMAN**


                                           _____
                                           Frances C. Wilburn, Esq. (Bar No. 17241)
                                           Harold M. Walter, Esq. (Bar No. 03387)
                                           Mark Dimenna, Esq. (Bar No. 07247)
                                           7501 Wisconsin Avenue, Suite 1000W
                                           Bethesda, Maryland  20814
                                           Telephone:  240.507.1712
                                           Email: _fwilburn@offitkurman.com_
                                           Email: _hwalter@offitkurman.com_
                                           Email: _mark.dimenna@offitkurman.com_

                                           And

                                           **HODGSON RUSS LLP**

                                           Ryan K. Cummings (pro hac vice forthcoming)
                                           James Zawodzinski (pro hac vice forthcoming)
                                           140 Pearl Street, Suite 100
                                           Buffalo, New York 14202
                                           Telephone: 716.848.1665
                                           Email: _ryan_cummings@hodgsonruss.com_
                                           Email: _jzawadzi@hodgsonruss.com_

                                           _Attorneys for Dante Domenichelli_


4922-1459-7646, v. 1